Sharon K. HAZEL and Henry L. Auge, Plaintiffs,

v.

MICHIGAN STATE EMPLOYEES ASSOCIATION, a Michigan corporation, and Central Office Staff Association, a/k/a COSA, an unincorporated association; jointly and severally, Defendants.

No. 5:92–CV–57.

United States District Court, W.D. Michigan, S.D.

June 23, 1993.

Steven T. Lett, R. David Wilson, Wilson, Lawler & Lett, Lansing, MI, for plaintiffs.

Michael E. Cavanaugh, Brandon W. Zuk, Fraser, Trebilcock, Davis & Foster, PC, Lansing, MI, George J. Brannick, Brannick & Dudus, Jackson, MI, for defendants.

## OPINION

QUIST, District Judge.

This is an action by plaintiffs Sharon Hazel and Henry Auge against their former employer, the Michigan State Employees Association (MSEA), and their former union, the Central Office Staff Association (COSA). In Count I of the Complaint, Sharon Hazel alleges that COSA failed to fairly represent her in her grievance against MSEA. Count II alleges that MSEA and COSA tortiously interfered with Ms. Hazel's rights under the Collective Bargaining Agreement. Count III alleges that the elimination of Ms. Hazel's job and resulting layoff in 1991 violated the Collective Bargaining Agreement between MSEA and COSA. In Counts IV and V, Ms. Hazel and Mr. Auge allege that they were not compensated for overtime work. This matter is before the Court on plaintiffs' motion for summary judgment and MSEA's motions for judgment on the pleadings and summary judgment. Defendant COSA filed a motion for summary judgment and adopted

MSEA's brief with respect to the claims of Ms. Hazel. On April 19, 1993, this Court heard oral arguments on the pending motions. The parties agreed that there were no factual disputes and that this matter was ripe for summary judgment. At the conclusion of the hearing I granted the plaintiffs' request to file a supplemental brief and permitted the defendants to respond. I have reviewed these supplemental materials.

## BACKGROUND FACTS

Plaintiffs, Sharon Hazel and Henry Auge, are former employees of defendant, Michigan State Employees Association (MSEA). MSEA is a nonprofit membership corporation which represents civil service employees of the State of Michigan with respect to terms and conditions of their employment. Ms. Hazel worked for MSEA as a labor relations representative. Mr. Auge was employed as a senior membership services representative. Both plaintiffs were involved in labor arbitrations. Their job responsibilities included selecting arbitrators, preparing grievances, researching, preparing arguments, examining witnesses and writing briefs. They were also involved in settlement negotiations. Both Mr. Auge and Ms. Hazel were paid more than $250.00 a week.

Some of MSEA's staff employees are represented by Central Office Staff Association (COSA). COSA is a labor union whose members work for MSEA. Plaintiffs were members of COSA. Ms. Hazel was its president and Mr. Auge was an officer. In its capacity as an employer of its staff, MSEA entered into a series of collective bargaining agreements with COSA. The terms of the plaintiffs' employment were the subject of a Collective Bargaining Agreement between COSA and MSEA dated October 31, 1989.

Article 23 of the Agreement read in part:

SECTION A. The Employer agrees to abide by the Fair Labor Standards Act of 1938, as amended. All bargaining unit employees except those classifications cited in Section H of this Article, shall be paid at the rate of time and one-half their regular rate of pay for hours worked in excess of forty (40) in any work week.

SECTION H. Ineligible employees (Membership Services Representatives, Labor Relations Representatives, Labor Relations Liaison, Information Officer and Program Specialists) shall receive compensatory time for work in excess of forty (40) hours per week, in accordance with Article 24 of this Agreement.

Article 24 stated in part:

SECTION A. Employees not entitled to overtime compensation pursuant to Article 23, Section C of this Agreement may earn compensable time in accordance with the following limitations:

9. Under no circumstances shall compensable time be compensated in cash, wages, or credit other than compensatory time off as provided in this Article.

In approximately 1985 MSEA suffered a raid on its membership by the UAW. As a result, MSEA suffered a substantial loss of membership and a decrease in the number of staff positions which it could support. Consequently, Ms. Hazel was laid off. She was later recalled and at the time of her second layoff was working as a labor relations representative. Mr. Auge was hired as a membership services representative after the first round of layoffs.

MSEA continued to experience financial difficulties. In August of 1991 MSEA's General Assembly passed a resolution directing MSEA to eliminate five positions. Consequently, Ms. Hazel was laid off effective September 15, 1991.[1] Mr. Auge was laid off effective September 27, 1991.

1. At that time, MSEA had two labor relations representatives (Sharon Hazel and Giavanna Cleveland) and four membership services representatives. Pursuant to the resolution, both of the labor relations representatives were laid off. Although Ms. Cleveland had fewer hours than Ms. Hazel as a labor relations representative, she had previously worked as a membership services representative and had more total seniority than any other labor relations representative or membership services representative, including Ms. Hazel. However, because Ms. Cleveland had more seniority than the least senior membership services representative, Steven Larsen, she was able to avoid layoff by bumping into his job and Mr. Larsen was laid off. Ms. Hazel had no prior experience as a membership services representative.

At the time of her layoff, Ms. Hazel was the president of COSA. However, the COSA membership voted that laid off members could not continue as active members of COSA and were therefore ineligible to remain officers. Ms. Hazel filed a series of grievances regarding the layoffs including one which alleged that her own layoff violated the MSEA–COSA Agreement. MSEA denied the grievance and left it up to COSA to decide whether to pursue the grievance to arbitration.

Ms. Hazel's layoff became effective before COSA made a final decision whether it would pursue her grievance to arbitration. After Ms. Hazel's layoff, Paul Summerlott handled the grievances against MSEA on behalf of COSA. He and COSA member Tim Mendaco were responsible for deciding whether to take unresolved grievances to arbitration. The two of them decided not to arbitrate Ms. Hazel's grievance because they did not believe it was "winnable." Mr. Summerlott informed MSEA's Staff Director, Linda Puchala, of their decision not to arbitrate Ms. Hazel's grievance. Ms. Puchala responded that arbitrating the grievance would have resulted in further layoffs.

Ms. Hazel was notified of her right to appeal. She argued her appeal before the COSA membership at a special meeting on November 12, 1991. The COSA membership voted unanimously not to arbitrate her layoff grievance.[2]

## LEGAL STANDARD

Summary judgment is appropriate if there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. The rule requires that the disputed facts be material. Material facts are facts which are defined by substantive law and are necessary to apply the law. A dispute over trivial facts which are not necessary in order to apply the substantive law does not prevent the granting of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91

L.Ed.2d 202 (1986). The rule also requires the dispute to be genuine. A dispute is genuine if a reasonable jury could return judgment for the nonmoving party. *Id.* This standard requires the nonmoving party to present more than a scintilla of evidence to defeat the motion. The summary judgment standard mirrors the standard for a directed verdict. The only difference between the two is procedural. Summary judgment is made based on documentary evidence before trial, and directed verdict is made based on evidence submitted at trial. 477 U.S. at 250–51, 106 S.Ct. at 2511. A moving party who does not have the burden of proof at trial may properly support a motion for summary judgment by showing the court that there is no evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). If the motion is so supported, the party opposing the motion must then demonstrate that there is a genuine issue of material fact for trial. *Id.* The Court must draw all inferences in a light most favorable to the non-moving party, but the Court may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Financial Corp. v. Van Sickle,* 967 F.2d 233, 236 (6th Cir.1992) (quoting *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

## ANALYSIS

### *Duty of Fair Representation*

In Count I of the Complaint, Ms. Hazel alleges that COSA failed to fairly represent her in her grievance against MSEA. She contends that COSA breached its duty of fair representation by not pursuing her grievance to arbitration and by changing her COSA membership from active to honorary status. She also asserts that COSA failed to withstand Ms. Puchala's alleged "threat" that arbitrating Ms. Hazel's grievance would have

---

2. Mr. Summerlott abstained from the vote to avoid any conflict of interest. He was the least senior of the remaining membership services representatives and was the most likely to be laid off in the event there were further lay offs.

resulted in further layoffs. In *Air Line Pilots Ass'n, Int'l. v. O'Neill,* 499 U.S. 65, ——, 111 S.Ct. 1127, 1130, 113 L.Ed.2d 51 (1991), the Supreme Court stated:

> [A] union breaches its duty of fair representation if its actions are either "arbitrary, discriminatory, or in bad faith" ... [a] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a "wide range of reasonableness," ... as to be irrational. (Citations omitted.)

Mere negligence or mistaken judgment does not breach a union's duty of fair representation. *Poole v. Budd Co.,* 706 F.2d 181 (6th Cir.1983).

■ An employee does not have an absolute right to arbitration of her grievance. *Vaca v. Sipes,* 386 U.S. 171, 190–91, 87 S.Ct. 903, 917, 17 L.Ed.2d 842 (1967). If the chances for success in arbitration are slight a union need not process an employer's grievance. *Williams v. Sea–Land Corp.,* 844 F.2d 17 (1st Cir.1988). In *Poole v. Budd Co.,* 706 F.2d 181 (6th Cir.1983), the court held that even if union officials mistakenly evaluate the probability of success on the merits, this is insufficient to establish a breach of the duty of fair representation.

In this case, Paul Summerlott testified that the COSA arbitration committee decided not to pursue Ms. Hazel's grievance to arbitration because they believed it lacked merit.

> It was my opinion that the grievances lacked enough merit not to be considered.... [W]e saw no reason to pursue the arbitration, there was no merit as far as we were concerned.

Summerlott Deposition at pp. 56–57.

Indeed, Article 8, the management rights article of the Collective Bargaining Agreement, specifically authorized MSEA to impose layoffs and consolidate work. Article 8 provides that MSEA has the right to "create,

combine or abolish jobs ... or layoff...." Given that Ms. Hazel did not have an absolute right to have her grievance arbitrated and that a union's mistaken judgment does not violate its duty of fair representation, this Court finds that COSA did not breach its duty of fair representation by failing to pursue Ms. Hazel's grievance to arbitration.

Ms. Hazel also complains that COSA breached its duty to her by "evicting" her from active membership in the union once she was laid off. However, Ms. Hazel has failed to produce evidence which would demonstrate that the conversion of her membership status prejudiced COSA's handling of her grievance. The record fails to show how COSA's decision not to arbitrate her grievance would have been different had she remained an active member of the union. Furthermore, the practice of converting membership status complies with a logical interpretation of COSA's constitution[3] and COSA's prior practice.[4]

As to Ms. Puchala's statement regarding further layoffs, this Court does not believe that her comment could reasonably be interpreted as a threat. MSEA was admittedly in a dire financial situation. Ms. Puchala's remark was more akin to a statement of fact than a threat.[5] Furthermore, Ms. Puchala's statement was made after the COSA arbitration committee had decided not to arbitrate Ms. Hazel's grievance.

This Court does not believe that COSA's actions with regard to Ms. Hazel could reasonably be interpreted as arbitrary, discriminatory, or in bad faith. COSA did not breach its duty of fair representation to Ms. Hazel and MSEA's motion for summary judgment as to this count will be granted.

### Tortious Interference

■ Ms. Hazel alleges in Count II that MSEA tortiously conspired with COSA to deprive her of rights provided under the

---

**3.** Article III, Section 1 of the COSA constitution provides that membership in COSA shall be available to all eligible and included employees of MSEA. Article III, Section 5 creates honorary membership for former employees of MSEA.

**4.** When MSEA imposed layoffs in 1985 and 1986 the laid off members were treated as non-active members of COSA.

**5.** Deposition testimony of Ms. Puchala and Mr. Summerlott indicates that the statement was not intended to be a threat.

Collective Bargaining Agreement. Defendants contend that this claim is preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C.A. § 185.

Section 301(a) provides:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

The Supreme Court has made it clear that section 301 preempts many claims based on collective bargaining agreements.

[O]nly the federal law fashioned by the courts under § 301 governs the interpretation and application of collective bargaining agreements.

*United Steelworkers of America v. Rawson,* 495 U.S. 362, 368, 110 S.Ct. 1904, 1909, 109 L.Ed.2d 362 (1990).

In state actions that substantially depend on analysis of a collective bargaining agreement, federal labor law supplants state law pursuant to section 301. *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 211, 105 S.Ct. 1904, 1911, 85 L.Ed.2d 206 (1985). In this case, Ms. Hazel's claim for tortious interference depends upon analysis of the Collective Bargaining Agreement. Indeed, Ms. Hazel alleges that MSEA interfered with the Collective Bargaining Agreement itself. Clearly, this claim will require interpretation of that Agreement.

In *Briggs v. General Motors Corp.,* 754 F.Supp. 107 (W.D.Mich.1990) the plaintiff sought damages from his former employer and supervisor for assault and battery, intentional infliction of emotional distress, and intentional interference with contractual relations. The tortious interference claim was

based upon the plaintiff's allegation that the defendants had interfered with the Collective Bargaining Agreement between the employer and the plaintiff's union. The court held that this claim was preempted by federal labor law.

The court finds that the intentional interference with contractual relations claim is preempted. To prevail on a claim for tortious interference with contractual relations under Michigan law, a plaintiff must show: 1) existence of a contract; 2) breach of a contract; and 3) instigation of the breach by the alleged tortfeasor without justification.

To adjudicate Briggs's interference with contract claim, the factfinder must examine the collective bargaining agreement to determine the existence of two essential elements of this tort—existence and breach. This claim substantially depends on interpretation of the labor contract. As a result, federal labor law, rather than Michigan tort law, preemptively applies to Court III of Briggs's complaint. (Citations omitted.)

*Id.* at 110.[6]

This Court finds that Ms. Hazel's claim of tortious interference with contractual rights is preempted by federal labor law. Therefore, MSEA is entitled to a judgment on the pleadings as to this count.

### Breach of Contract

In Count III of her Complaint, Ms. Hazel alleges that the elimination of her job and her resulting layoff violate certain provisions of the Collective Bargaining Agreement between MSEA and COSA. The Complaint does not specify whether the alleged breach was a violation of state or federal law.

### State

■ A breach of contract claim based upon state law is preempted by the Labor

---

**6.** The court in *Briggs* distinguished the cases of *Fox v. Parker Hannifin Corp.,* 914 F.2d 795 (6th Cir.1990) and *Dougherty v. Parsec, Inc.,* 872 F.2d 766 (6th Cir.1989). Those cases held that section 301 did not preempt a tortious interference claim under Ohio law. The *Briggs* court stated that "[t]he need to examine the underlying con-

tract to determine existence and breach of a contract under Michigan tort law distinguishes Briggs' claim from tortious interference claims that do not require an explicit breach of contract finding and avoid preemption as a result." *Id.* at 110.

Management Relations Act, 29 U.S.C.A. § 185. The Sixth Circuit has consistently held that state law claims for breach of contract are preempted by Section 301. *Ulrich v. Goodyear Tire & Rubber Co.*, 884 F.2d 936 (6th Cir.1989); *Serrano v. Jones & Laughlin Steel Co.*, 790 F.2d 1279 (6th Cir.1986).

### Federal

■ In order for Ms. Hazel to pursue a section 301 action against her employer for violating the Collective Bargaining Agreement she must show that her union breached its duty of fair representation in processing her grievance. *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 62, 101 S.Ct. 1559, 1564, 67 L.Ed.2d 732 (1981). Because this Court has determined that COSA did not violate its duty of fair representation, Ms. Hazel's breach of contract claim against MSEA also fails.

## OVERTIME COMPENSATION

### Michigan Hours and Wages Act

In Count IV of their Complaint, plaintiffs allege that they are entitled to unpaid overtime compensation under the Michigan Wage Act, M.C.L.A. § 408.381 et seq.; M.S.A. § 17.255(1) et seq. Defendants contend that they are entitled to a judgment on the pleadings as to this count because the Michigan Act does not apply to employers that are subject to the Federal Fair Labor Standards Act. M.C.L.A. § 408.394; M.S.A. § 17.-255(14) provides in part:

> The provisions of this act shall not apply to any employer who is subject to the minimum wage provisions of the federal fair labor standards act of 1938 [29 U.S.C.A. § 201, et seq.], as amended, except in any

case where application of such minimum wage provisions would result in a lower minimum wage than provided in this act ...

Plaintiffs admit in their Complaint that MSEA is an employer subject to the Federal Fair Labor Standards Act. MSEA does not dispute this allegation.[7] Consequently, M.C.L.A. § 408.394; M.S.A. § 17.255(14) bars the plaintiffs' recovery and the defendants are entitled to a judgment on the pleadings as to this count.

### Federal Fair Labor Standards Act

■ Count V of the Complaint alleges that the plaintiffs are entitled to overtime compensation pursuant to the Federal Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.* Defendants have moved for summary judgment as to this count because they claim the plaintiffs were salaried employees and performed exempt professional or administrative work.

29 U.S.C.A. § 207(a)(1) requires an employer to pay one and one-half times the regular rate of compensation to employees who work more than forty hours in a work week. However, exemptions to this requirement are set forth in section 29 U.S.C.A. § 213. Section 213 states that the provisions of 206 and 207 do not apply with respect to:

> (1) any employee employed in a bona fide executive, administrative, or professional capacity ... (as such terms are defined and delimited from time to time by regulations of the Secretary [of Labor] ...

29 C.F.R. § 541.2 contains the Department of Labor's regulations interpreting the phrase "employee employed in a bona fide ... administrative ... capacity."[8] The reg-

---

7. 29 U.S.C.A. § 203(d) states that the word "employer" "does not include any labor organization (*other than when acting as an employer*) ..." (Emphasis added.)

8. § 541.2 Administrative

The term *employee employed in a bona fide ... administrative ... capacity* in section 13(a)(1) of the Act shall mean any employee:

(a) Whose primary duty consists of either:

(1) The performance of office or nonmanual work directly related to management policies or general business operations of his employer or his employer's customers, or

(2) The performance of functions in the administration of a school system, or educational establishment or institution, or of a department or subdivision thereof, in work directly related to the academic instruction or training carried on therein; and

(b) Who customarily and regularly exercises discretion and independent judgment; and

(c)(1) Who regularly and directly assists a proprietor, or an employee employed in a bona fide executive or administrative capacity (as such terms are defined in the regulations of this subpart), or

ulation contains a specific provision for employees receiving a salary of not less than $250.00 dollars per week.

[A]n employee who is compensated on a salary or fee basis at a rate of not less than $250.00 per week ... exclusive of board, lodging, or other facilities, and whose primary duty consists of the performance of work described in paragraph (a) of this section, which includes work requiring the exercise of discretion and independent judgment, shall be deemed to meet all the requirements of this section.

Paragraph (a), referenced above exempts individuals whose primary duty consists of performing office or non-manual work which is directly related to management policies or general business operations of the employer or the employer's customers. 29 C.F.R. § 541.2(a)(1) (see footnote 8 for the exact language of the regulation)

Thus, an employee who is paid at least $250.00 per week is exempt as a bona fide administrative employee if:

1. The employee is paid on a salary basis;

2. The employee's primary duty consists of the performance of office or non-manual work directly related to management policies or general business operations of the employer or the employer's customers; and

3. The employee's work requires the exercise of discretion and independent judgment.

(2) Who performs under only general supervision work along specialized or technical lines requiring special training, experience, or knowledge, or

(3) Who executes under only general supervision special assignments and tasks; and

(d) Who does not devote more than 20 percent, or, in the case of an employee of a retail or service establishment who does not devote as much as 40 percent, of his hours worked in the workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (a) through (c) of this section; and

(e)(1) Who is compensated for his services on a salary or fee basis at a rate of not less than $155 per week ($130 per week, if employed by other than the Federal Government in Puerto Rico, the Virgin Islands, or American Samoa), exclusive of board, lodging, or other facilities, or

The Court will examine these factors in the order set forth above.

### Salary

29 C.F.R. § 541.212 adopts for administrative employees the salary basis test for executive employees set forth at 29 C.F.R. § 541.118. Section 541.118 provides in part:

(a) An employee will be considered to be paid "on a salary basis" within the meaning of the regulations if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed. Subject to the exceptions provided below, the employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked. This policy is also subject to the general rule that an employee need not be paid for any workweek in which he performs no work.

Defendants claim that Ms. Hazel's and Mr. Auge's compensation fits this definition precisely. The plaintiffs testified that they received the same amount of compensation each pay period regardless of the amount of work they performed. Neither of the plaintiffs could recall an instance in which pay was increased or reduced because of a variation in the amount of work completed.

(2) Who, in the case of academic administrative personnel, is compensated for services as required by paragraph (e)(1) of this section, or on a salary basis which is at least equal to the entrance salary for teachers in the school system, educational establishment, or institution by which employed: *Provided*, That an employee who is compensated on a salary or fee basis at a rate of not less than $250 per week ($200 per week if employed by other than the Federal Government in Puerto Rico, the Virgin Islands, or American Samoa), exclusive of board, lodging, or other facilities, and whose primary duty consists of the performance of work described in paragraph (a) of this section, which includes work requiring the exercise of discretion and independent judgment, shall be deemed to meet all the requirements of this section.

Plaintiffs contend that they were paid on an hourly basis. In support of their position, plaintiffs refer to Appendix A–1 of the Collective Bargaining Agreement. This document, entitled Salary Schedule Effective 10/1/89, contains pay levels for grades 5 through 15 expressed in dollars to be paid per hour. Plaintiffs cite various other documents which identify their rate of pay on an hourly basis.[9] They also refer to the accounting procedure used on their paychecks which recorded hours, comp time, vacation and sick time. Mr. Auge and Ms. Hazel submitted affidavits which state that they were not employed on a salaried basis but on an hourly basis.

In support of their position, plaintiffs cite *Michigan Supervisors' Union v. State of Michigan*, 826 F.Supp. 1081 (W.D.Mich. 1993). That case involved an action for recovery of unpaid overtime compensation pursuant to the Fair Labor Standards Act. The court relied on 29 C.F.R. § 541.11(a) and stated that if a salaried employee works at all in a work week—whether it be one minute, an hour, or a day—he or she is entitled to receive full salary for that work week. Because the plaintiffs in *Michigan Supervisors' Union* were paid on a salary basis, they were entitled to compensation for lost wages due to a four day mandatory layoff in 1991.

█ The plaintiffs in this case contend that they were hourly employees because they were required to apply annual leave credits to avoid a loss of income during a mandatory layoff for a period of less than one full work week. This Court does not believe that *Michigan Supervisors' Union* supports the plaintiffs' position. The court in *Michigan Supervisors' Union* did *not* find that the plaintiffs were hourly employees. Rather, it held that they were salaried employees who were entitled to a full salary for a partial work week.

Plaintiffs also assert that in pay periods during which they performed additional work they were awarded compensatory time. The compensatory time could be applied to pay periods in which they worked fewer hours. They contend that these facts are similar to the facts in *Hodgson v. Barge, Waggoner and Sumner, Inc.*, 377 F.Supp. 842 (M.D.Tenn.1972), *aff'd*, 477 F.2d 598 (6th Cir. 1973) where the court found that the employees were not salaried employees. However, this Court finds the facts of *Hodgson* distinguishable. In *Hodgson*, an employee who had hours of credit coming to him was written a check for the balance he had accumulated in the hour bank. *Id.* at 844. If there was a deficit in an employee's hour bank, it was charged against his bonus. Thus, the employees in *Hodgson* received variations in their pay based upon the number of hours they worked.

The plaintiffs in this case were never paid cash in lieu of compensatory time, nor was their pay decreased because they used excess compensatory time. Rather, they received the same amount of pay each pay period regardless of the amount of work they had performed. This Court finds that the plaintiffs were paid on a salary basis.[10]

9. Plaintiffs cite their employee personal records, their notifications of pay increases, and their personnel change notices. All of these documents express compensation in terms of dollars per hour.

10. After I heard oral arguments in this case, the Sixth Circuit issued an opinion addressing the issue of salaried employees. In *Michigan Ass'n of Governmental Employees v. Michigan Dep't of Corrections*, 992 F.2d 82 (6th Cir.1993), the plaintiffs sued their employer for overtime compensation. The district court found that the plaintiffs were exempt from the overtime requirements of the FLSA because they were "bona fide executives." It granted the defendant's motion for summary judgment and dismissed the case. On appeal, plaintiffs argued that they were not bona fide executives because they were not paid on a salaried basis. Plaintiffs cited the defendant's sick leave policy which stated that when sick leave was exhausted "compensation reduction for the time lost shall be made for the work period in which the absence occurred." *Id.* at 85. Plaintiffs argued that once leave credits were exhausted, their compensation would be reduced for absences of less than one day. The court, however, found that the compensation manual was ambiguous. It did not state specifically that the plaintiffs would receive a pay reduction for absences of less than one day. Because the parties disputed how the manual was to be properly interpreted, the court looked to how the policy had been applied. It found that the plaintiffs' pay had never been reduced for absences of less than one day. This fact sup-

## Primary Duties

The next issue to be addressed is whether the plaintiffs' primary duties consisted of the performance of office or non-manual work directly related to management policies or general business operations of the employer or its customers. Ms. Hazel was employed as a labor relations representative. She provided representative services to members at the appellate level. Her job responsibilities included investigating, documenting, negotiating and presenting complex cases. Mr. Auge was employed as a senior membership services representative. He provided advice, support, training and assistance to members located within a geographic region.

29 C.F.R. § 541.203(a) provides that "[i]f the work performed is 'office' work it is immaterial whether it is manual or nonmanual in nature." In this case, the plaintiffs concede that they performed non-manual work which was related to the general business operations of the employer:

> Certainly in this instance the Plaintiffs are not performing manual work and they are performing work directly related to the general business operations of the employer that being representation of union members and the employers (sic) customers. . . .

Plaintiffs' Brief in support of their Motion For Summary Judgment at p. 20.

29 C.F.R. § 541.205 discusses work which qualifies as being directly related to management policies or general business operation.

> The phrase "directly related to management policies or general business operations of his employer or his employer's customers" describes those types of activities relating to the administrative operations of a business as distinguished from "production" or, in a retail or service establishment, "sales" work.

29 C.F.R. § 541.205(a).

> The administrative operations of the business include the work performed by so-

called white-collar employees engaging in "servicing" a business as, for example, advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control.

29 C.F.R. § 541.205(b).

It is clear from the regulations that the term "directly related to management policies or general business operations" is not limited to individuals who participate in the operation of the business as a whole. The term also includes individuals who carry out major assignments related to the operation of a particular segment of the business.

> Employees whose work is "directly related" to management policies or to general business operations include those [whose] work affects policy or whose responsibility it is to execute or carry it out. The phrase also includes a wide variety of persons who either carry out major assignments in conducting the operations of the business, or whose work affects business operations to a substantial degree, even though their assignments are tasks related to the operation of a particular segment of the business.

29 C.F.R. § 541.205(c).

Furthermore, the management policies or general business operations involved may be that of the employer's customer.

> Under § 541.2, the "management policies or general business operations" may be those of the employer or the employer's customers. For example, many bona fide administrative employees perform important functions as advisors and consultants but are employed by a concern engaged in furnishing such services for a fee. Typical instances are tax experts, *labor relations consultants*, financial consultants, systems analysts, or resident buyers. Such employees, if they meet the other requirements of § 541.2, qualify for exemption regardless of whether the management

ported the defendant's interpretation of the sick leave policy. The Sixth Circuit found that the sick leave policy did not "jeopardize the plaintiffs' status as salaried employees exempt from the overtime regulations." *Id.* at 86. It affirmed the district court's decision. I have reviewed the collective bargaining agreement relevant to this case in light of this recent Sixth Circuit opinion. However, I have been unable to locate any provisions similar to the sick leave policy in *Michigan Ass'n of Governmental Employees.*

policies or general business operations to which their work is directly related are those of their employer's clients or customers or those of their employer. (Emphasis added.)

29 C.F.R. § 541.205(d).

In this case, both Ms. Hazel and Mr. Auge performed office work which was directly related to the management policies or general business operations of their employer or its customers.

### Exercise of Discretion

An employee's work involves the exercise of discretion and independent judgment if it involves "the comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.207(a). Decisions which are within the employee's discretion and independent judgment must have some significance. 29 C.F.R. § 541.207(d). However, it is not necessary that the employee's decisions have a "finality that goes with unlimited authority and a complete absence of review." 29 C.F.R. § 541.207(e).

In this case, Ms. Hazel and Mr. Auge were responsible for representing members. Ms. Hazel's duties as a Labor Relations Representative included researching, investigating complaints, selecting arbitrators and working with outside counsel. Her job description specifically stated that she was to determine a "strategic approach for arguments based on case facts and research." She was also responsible for "evaluat[ing] proposed settlements."

Mr. Auge's duties as a Senior Membership Services Representative included developing programs to respond to the needs of members, advising members with regard to grievance procedures and clarifying contract provisions. His job description indicates that he was responsible for preparing files and presenting cases for grievance hearings. He was also responsible for mediating member conflicts and formulating settlements.

This Court finds that plaintiffs' duties clearly involved discretion and independent judgment. Their work was not unlike the work performed by an attorney. They were responsible for evaluating the circumstances and deciding how best to proceed in each case. Certainly, this type of work requires the exercise of discretion and independent judgment.

This Court finds that the plaintiffs were bona fide administrative employees and were thus exempt from the overtime requirements of the Fair Labor Standards Act. MSEA's motion for summary judgment as to Count V of the Complaint shall be GRANTED.